UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

ZENYEA BEACHEM                          CASE NO.  3:21-CV-00299

VERSUS                                  JUDGE TERRY A. DOUGHTY

LASALLE CORRECTIONS L L C ET AL         MAG. JUDGE KAYLA D. MCCLUSKY

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 78] filed by Defendants Kyle Erwin, Fred Fletcher, Sgt. Kimble Marshall, LaSalle Management Company, LLC, LaSalle Corrections, LLC, WMC Enterprises, LLC, and KPL, LLC (collectively, "Defendants"). Plaintiff Zenyea Beachem ("Plaintiff" or "Beachem") opposes the Motion [Doc. No. 81]. Defendants have filed a reply [Doc. No. 87].

Within the Defendants' Reply, the Court construed that Defendants were moving to strike certain depositions attached as exhibits to Plaintiff's response [see Doc. No. 96]. The Court ordered additional briefing on the motion to strike. Plaintiff responded to the Motion [Doc. No. 97]. Defendants did not reply.

For the following reasons, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**.

I.      BACKGROUND AND PROCEDURAL HISTORY

Cecil Williams ("Williams") was a twenty-year-old black male who suffered from asthma.[1] At the time of his death, he was incarcerated as a convicted felon and was awaiting trial; therefore, he was a pretrial detainee.[2] Despite originally being housed in East Baton Rouge Parish awaiting

---

[1] [Doc. No. 1, ¶ 18]
[2] [Doc. No. 79-1, ¶ 54]

trial, Williams was transferred to Madison Parish Correctional Center ("MPCC") on July 2, 2020.[3]
Upon such arrival, Williams immediately complained that he did not have albuterol in his inhaler.[4]

On July 9, 2020, Williams suffered a fatal asthma attack at MPCC.[5]

In the early morning of July 9, 2020, Charlyn Smith ("Smith"), a correctional officer at MPCC, was working in Building 4, Control Room 1.[6] During Smith's shift around 3:51 a.m., Williams knocked on the flap to the Control Room, indicated that he could not breathe, and then immediately climbed the bars in front of the room.[7] Defendants assert that at 3:59 a.m., Smith called MPCC's on-call nurse, Kyle Erwin ("Erwin"), and informed him of Williams' expressions.[8] Erwin responded that he was on the way to MPCC.[9]

Meanwhile, Smith's supervisor, Sergeant Kimble Marshall ("Sgt. Marshall"), who was also present in the Control Room, went to check on Williams.[10] Upon entering the dorm, Sgt. Marshall observed inmates surrounding Williams as he indicated that he was having an asthma attack.[11] Accordingly, Sgt. Marshall left the dorm and informed his supervisor of his observations, and that Williams was responsive.[12]

Throughout that morning, Sgt. Marshall checked on Williams in between his duties of serving breakfast to other inmates.[13]

---

[3] [Doc. No. 79, p. 8]
[4] [Id.]
[5] [Doc. No. 1, pp. 3-4]
[6] [Doc. No. 79-1, ¶ 1, 3]
[7] [Id. at ¶ 4,7]
[8] [Id. at ¶ 11]
[9] [Id. at ¶ 11, 43]
[10] [Id. at ¶ 15, 20-22]
[11] [Id. at ¶ 23-24]
[12] [Id. at ¶ 25-26]
[13] [Id. at ¶ 27]

During the first check-in, Sgt. Marshall saw Williams at the door and as he began removing him from the dorm, Williams urinated on himself and fell to the ground, where he was barely breathing and unable to function "on his own."[14] Following this incident, Sgt. Marshall placed Williams back into the dorm and observed another offender give him an asthma pump to breathe better.[15] When Williams began functioning on his own again, Sgt. Marshall left to tend to his breakfast duties.[16]

During the second check-in, an offender informed Sgt. Marshall that Williams had stopped breathing.[17] After confirming that Williams was in distress, Sgt. Marshall executed chest compressions.[18] He avers that he cannot remember if he performed mouth-to-mouth CPR, but he claims that he definitely performed chest compressions.

Immediately following this incident, Fred Fletcher ("Fletcher"), who, at the time, was a shift supervisor and lieutenant, received a call that there was a medical emergency to which he responded.[19] As Fletcher entered the Control Room, he observed Sgt. Marshall performing CPR on Williams.[20] Consequently, Fletcher informed the Control Room Operator to call Erwin and 911, but he was told that such calls were already made.[21] Defendants assert that around 4:28 a.m., Smith called Erwin for a second time with an update on Williams.[22] During this phone call, Lt. Devario

---

[14] [Doc. No. 79, p. 13]
[15] [Id.]
[16] [Id.]
[17] [Id. at pp. 13-14]
[18] [Doc. No. 79-1, ¶ 30-31]
[19] [Id. at ¶ 34, 36]
[20] [Id. at ¶ 37]
[21] [Id. at ¶ 38]
[22] [Id. at ¶ 12]

Banks ("Lt. Banks") spoke with Erwin and was advised to call 911.[23] Upon Erwin's arrival, the paramedics also arrived, which was at 4:49 a.m.[24]

Once the EMS declared that Williams had no pulse or heartbeat,[25] it instructed the sheriff's office to notify the coroner.[26] Erwin then notified the prison nurse practitioner, and Williams was pronounced dead at 5:30 a.m. by Dr. T.A. Neumann.[27]

Dr. Christopher Tape ("Dr. Tape"), a forensic pathologist, performed an autopsy on Williams.[28] The written report of Dr. Tape's findings indicates that Williams' cause of death was asthma and a 5-flouro-MDMB-PICA toxicity (synthetic marijuana) with contribution of hypertensive atherosclerotic cardiovascular disease.[29] Dr. Tape explained in his findings that:

> Q: Can you explain … you found two causes, two separate causes of death—is that correct?
> A: There are two significant causes that one doesn't totally dominate, so I basically put them both in *as* cause of death as sort of cofactors in this case.
> Q: Is it fair to say that when you do something like that you can't make a determination which of those two was the specific cause of death?
> A: That's right. They're both significant enough and they're both— people do die from asthma, but it's somewhat rare. The whole thing with this synthetic cannabinoids or as I said synthetic marijuana, that's such a new thing, but it seems to be unpredictable and deadly. So between those two, I have to sort of put them both at least on equal footing.[30]

---

[23] [Id.]
[24] [Id. at ¶ 13, 46]
[25] [Doc. No. 1, ¶ 21]
[26] [Doc. No. 79, p. 16]
[27] [Id.]
[28] [Id. at p. 18]
[29] [Id. at p. 19]
[30] [Doc. No. 79-9, p. 6]

On February 3, 2021, Zenyea Beachem ("Beachem") filed a wrongful death action against Defendants in this Court on behalf of her biological children, Zamiyah Beachem, William Ivery, and Zazyria Beachem, three children she claims to have had with Williams.[31]

In the Second Amended Complaint,[32] Karnesha Williams ("Karnesha"), the mother of Williams (the decedent) and the Succession of Cecil Devontae Williams were added as plaintiffs.[33] In the Third Amended Complaint, the claims made by the Succession of Karnesha Williams and on behalf of Zamiyah Beachem and William Ivery were properly abandoned because they are not within the class of people allowed to file a survival or wrongful death action if the decedent has a child.[34]

Plaintiff filed suit against Defendants under state and federal law claims of negligence. Under federal law, the standard is whether the Defendants had gained actual knowledge of a substantial risk of suicide and responded with deliberate indifference. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996). Under state law, the standard is whether the Defendants can be found to have acted negligently under the four-prong inquiry of Louisiana's duty-risk analysis. *Mart v. Hill*, 505 So.2d 1120 (La. 1987).

On June 23, 2023, Defendants filed a motion for summary judgment seeking the dismissal of Beachem's wrongful death action with full prejudice.[35] The primary issue in this case is whether Defendants are legally responsible.

The issues are briefed, and the Court is prepared to rule.

---

[31] [Doc. No. 1]

[32] Which should have been the First Amended Complaint.

[33] [Doc. No. 25]

[34] [La. Civil Code Art. 2315.1(1) and 2315.2(1); Jazyria Beachem is Williams' child]

[35] [Doc. No. 1]

## II.     LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both

6

parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

### B.  Analysis

In their Motion, Defendants assert that Plaintiff's only federal claim was brought under 42 U.S.C. § 1983 for wrongful death; negligence in training; negligence in hiring; negligence in supervision; negligence for not having an emergency asthma inhaler in accordance with practice standards and governmental regulations in effect; and violation of rights otherwise guaranteed under state and federal law. Defendants further allege that Plaintiff  made state law claims asserting that Defendants committed state law torts of assault, battery, and wrongful death.

In response, Plaintiff argues that Defendants are liable under 42 U.S.C. § 1983 for their deliberate indifference to Williams' medical needs; that the Defendants did not act in good faith and are not entitled to qualified immunity; failure to train/negligent training; supervisory liability; individual liability; that there was no policy in place to handle Williams' needs prior to his death;

claims under the Eighth and Fourteenth Amendment of the United States Constitution; punitive damages; and Plaintiff disputes that Zenyea Beachem improperly brought claims on behalf of her minor child Jazyria Steward.

Plaintiff argues that Defendants are liable for wrongful death due to inadequate medical care. Plaintiff asserts that Defendants were deliberately indifferent to Williams's serious medical needs because they did not supply him with albuterol in his inhaler and because there was no policy in place to handle this type of medical emergency.

### 1. Were Defendants Deliberately Indifferent to Williams' Serious Medical Needs?

In general, the State's incarceration of pretrial detainees and convicted state prisoners comports with due process guarantees because of the State's recognized interests in detaining defendants for trial and in punishing those who have been adjudged guilty of a crime. The State's exercise of its power to hold detainees and prisoners, however, brings with it a responsibility under the U.S. Constitution to tend to essentials of their well-being:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs— *e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 200 (1989) (citations omitted). Hence, since pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of "basic human needs."

This is not a typical § 1983 case against state actors whose legal obligations and liabilities are set forth in the law. Instead, this is a case where the responsibility for housing and caring for prisoners has been contracted out to a private corrections company that appears to be comprised of several limited liability companies with some common ownership. This does not change the standard of care owed to detainees.

"[M]edical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, at 643 (5th Cir. 1996). When a claim is based on a jail official's episodic acts or omissions, the proper inquiry is whether the official had a culpable state of mind in acting or failing to act. For episodic acts or omissions cases, courts have adopted a standard of deliberate indifference as the measure of culpability for such episodic acts or omissions. This is so because a proper application of *Bell*'s reasonable-relationship test is functionally equivalent to a deliberate indifference inquiry. *Bell v. Wolfish*, 441 U.S. 520 (1979). The Court must then determine whether to apply an objective or subjective definition of deliberate indifference. Specifically, Plaintiff must first prove objective exposure to a substantial risk of serious harm. Additionally, he must show that prison officials acted or failed to act with deliberate indifference to that risk.

Based on the pleadings, Plaintiff's claims fall under the episodic acts or omissions claims. The episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs. *Hare*, at 648. A state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk. Therefore, Plaintiff has the burden

of proving that the individual Defendants had a substantial risk of serious harm to the detainee, and coupled with that knowledge, that the Defendants acted with deliberate indifference to the detainee.

Deliberate indifference is shown where an official "refuse[s] to treat [a detainee], ignore[s] his complaints, intentionally treat[s] him incorrectly, or engage[s] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir.2012) (citation and quotations omitted). Applying that standard here, Plaintiff must show that the Defendants either refused to provide treatment to Williams, ignored his complaints, intentionally treated him incorrectly, or engaged in any other conduct evincing wanton disregard for a serious medical need. "[A]cts of negligence or medical malpractice do not constitute deliberate indifference...." *Id.* (citation omitted). Supervisory prison officials may be held liable for a Section 1983 violation only if there were "personal involvement in the constitutional deprivation, or ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) (citation omitted). "It is facially evident that this test cannot be met if there is no underlying constitutional violation." *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 425 (5th Cir.2006) (citation omitted).

### a.  Subjective knowledge of a substantial risk of serious harm

As stated above, Plaintiff must first show that the individual Defendants had subjective knowledge of a substantial risk of serious harm to Williams. Defendants assert that "Plaintiff will be unable to show that any of the Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Williams existed or that anyone subjectively

drew the inference that the risk existed and then disregarded that risk."[36] Plaintiff argues that Defendants did have subjective knowledge of a substantial risk of serious harm. Importantly, Plaintiff asserts that Defendants knew that Williams had a history of asthma, and that he required albuterol in his inhaler. While this is a general statement, there are two other incidents that create a genuine issue of material fact that Defendants had subjective knowledge of a substantial risk of serious harm.

The first is when Williams informed Smith that he could not breathe. Based on Defendants' memorandum, it appears that Smith disregarded Williams's comment because of the level of energy he was showing to her, i.e., climbing on the bars in front of the control room window. Next, Sgt. Marshall was told by Smith of Williams's complaints about not being able to breathe. At or around 3:50 a.m., Sgt. Marshall went to check on Williams, who was complaining again that he was having an asthma attack. Because Williams was talking to Sgt. Marshall, he believed that this contradicted Williams's complaints of having an asthma attack. Sgt. Marshall allegedly checked on Williams after each time he served food to a dorm, and during one of those checks, Sgt. Marshall was removing Williams from one of the dorms, and Williams began to urinate himself and fell to the floor. Williams was unable to breathe in this moment, and he was only able to breathe and function on his own when given an asthma pump from a fellow inmate. Sgt. Marshall left Williams after this. He did not return to check on Williams until he was informed that Williams was not breathing again, and he allegedly performed chest compressions on Williams. Williams never regained consciousness.

The Court finds that Defendants, therefore, did have subjective knowledge of a substantial risk of serious harm. Williams urinating on himself, falling to the ground, and only regaining

---

[36] [Doc. No. 79, p. 23]

consciousness after using someone else's inhaler all created subjective knowledge that there was some serious risk of harm. Next, the Court will determine if there is a genuine issue of material fact that the Defendants acted with deliberate indifference to the risk.

> **b.  Whether the Defendants acted with deliberate indifference to the substantial risk of serious harm**

As stated above, Plaintiff must show that the Defendants either refused to provide treatment to Williams, ignored his complaints, intentionally treated him incorrectly, or engaged in any other conduct evincing wanton disregard for a serious medical need. Acts of negligence cannot qualify as deliberate indifference because the Defendants cannot accidentally be deliberate. Deliberate indifference is an extremely high standard to meet. The question for the Court to decide in the instant motion is whether there exist genuine disputed issues of fact that Defendants purposefully neglected Williams's medical needs.

This Court finds that there is a genuine disputed issue of fact that the Defendants purposefully neglected Williams' medical needs. There are numerous factual issues that allude to Defendants ignoring Williams' medical needs and/or refusing to provide treatment to Williams. First, both Plaintiff and Defendants agree that Williams informed Smith that he was having an asthma attack and needed albuterol in his inhaler. Instead of heeding Williams' request, or at the very least investigating the complaint, Smith dismissed Williams' complaints because he was "climbing on the bars in front of the control room," which apparently meant that there was an "absence of any sign of medical impairment."[37] It is uncontroverted that Smith did not act on his request for albuterol, and she alleges that she contacted the on-call nurse to tell him what Williams told her.

---

[37] [Doc. No. 79, p. 26]

Then, Plaintiff had an asthma attack that Sgt. Marshall dismissed because Plaintiff was speaking, which he evidently construed to mean that Williams was not having an asthma attack. Following that, Plaintiff had a subsequent asthma attack that rendered him unable to breathe on his own, requiring him to employ the use of another inmate's inhaler that did contain albuterol in order to function. Even this did not compel Defendants to act on Williams' complaints of having an asthma attack and being unable to breathe. Finally, there remains an issue between Plaintiff and Defendants on whether Sgt. Marshall performed CPR on Williams when he discovered he was unconscious after a second attack, which ultimately led to his death. Sgt. Marshall asserts that he did chest compressions but cannot remember if he performed mouth-to-mouth CPR on Williams.

The Court knows that deliberate indifference is an extremely high standard to meet. However, the facts here indicate that there is a genuine dispute of material fact regarding whether or not Defendants were deliberately indifferent to Williams' serious medical needs. Before Williams' death, he had two asthma attacks that Defendants clearly ignored. The seriousness of the medical needs in this case should not be called into question when the result of the incident was death.

Because there are genuine issues of material fact remaining on whether Defendants acted with deliberate indifference to Williams serious medical needs, the Motion for Summary Judgment on this issue is DENIED.

### 2. *Monell* **claims for inadequate medical care against LaSalle Defendants**

Defendants argue that the LaSalle Defendants cannot be held responsible for the death of Williams pursuant to § 1983. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 689 (1978), the United States Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of § 1983, In *Rosborough v. Management & Training*

*Corp.*, 350 F.3d 459, 461 (5th Cir. 2003), the Fifth Circuit extended municipal corporate liability under § 1983 to include private prison-management corporations and their employees. "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Coleman v. LaSalle Correctional Center*, 2008 WL 2465989, at *4–5 (W.D. La. 2008) (citing *Phillips v. Corrections Corp. of America*, 2006 WL 1308142 at *3 (W.D. La. 2006)); *see also Monell*, 436 U.S. at 694.

"To succeed on a *Monell* claim, plaintiffs 'must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)'." *Austin v. City of Pasadena, Texas*, 2023 WL 4569562, at *12 (5th Cir. 2023) (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)). "[T]he critical question is to decide who is the final policymaker, which is an issue of state law." *See Advanced Technology Building Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016), *cert. den.*, 137 S. Ct. 297 (U.S. 2016) (citing *Jett v. Dallas Independent School District*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

"The first element, the existence of a policy or custom, is satisfied if a practice is 'so persistent and widespread as to practically have the force of law'." *Austin*, 2023 WL 4569562, at *13 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Austin*, 2023 WL 4569562, at *13 (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. den.*, 506 U.S. 973 (1992)). "What must be shown is 'that the policy itself violated federal law or authorized or directed the deprivation of federal rights.'" *Austin*, 2023 WL 4569562, at *12 (citing *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

"[A] municipality may be liable for failing to adopt policies." *Austin*, 2023 WL 4569562, at *12 (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992), and *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight." *Id.*

"[M]unicipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been deliberately indifferent." *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 62 (citing *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997)). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Austin*, 2023 WL 4569562, at *12 (citing *Rhyne*, 973 F.2d at 392, and *City of Canton*, 489 U.S. at 387).

The crux of Plaintiff's argument is not that the Defendants' policy is unconstitutional, but instead that Defendants had no policy in place, that is, that there was a failure to adopt a policy. The failure to adopt a policy is a question of deliberate indifference on behalf of the policymaker. Because this Court has found that there is a genuine dispute of material fact as to whether Defendants acted with deliberate indifference, Defendants' Motion is DENIED as it relates to the inadequate medical care claims against the LaSalle Defendants.

### 3.  Failure to Train and Supervise

Next, Defendants contend that Plaintiff failed to allege sufficient facts to support a claim that they have a custom or policy of failing to adequately train LaSalle Correctional Center employees in the face of medical emergencies.

"[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (citing *City of Canton, Ohio*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 62 (citing *Board of Commissioners of Bryan County*, 520 U.S. at 410). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 62 (citing *Canton*, 489 U.S., at 395).

"The infringement of the plaintiff's constitutional rights must be an 'obvious' and 'highly predictable' consequence of the failure to train." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022) (citing *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015)). "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Parker*, 23 F.4th at 525 (citing *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 286 (5th Cir. 2002)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional. *See Thompkins*, 828 F.2d at 304.

"The Supreme Court in *Canton* advanced two ways of proving deliberate indifference: (1) through proof of a pattern of violations that make the need for further training obvious to

16

policymakers or (2) for failing to provide training when the risk of constitutional violations was or should have been obvious or highly predictable." *Mathis*, 2021 WL 5088276, at *40 (citing *Littell v. Houston Independent School District*, 894 F.3d 616, 624 (5th Cir. 2018)). "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Mathis*, 2021 WL 5088276, at *40 (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992), *cert. den.*, 506 U.S. 824 (1992)).

Plaintiff has not described any specific policy or custom for training or supervision or alleged a specific deficiency in the programs for training and supervision of inmates that Defendants are responsible for and that is causally related to the injuries. "The description of a policy or a custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

Therefore, Plaintiff fails to state a § 1983 claim under *Monell* against Defendants for a policy of constitutionally deficient employee training or supervision. Therefore, Defendants' Motion is GRANTED on the failure to train and supervise.

### 4.  State Law Claims

In Louisiana, prison authorities owe a duty to provide an inmate with reasonable medical care. *Harper v. Goodwin*, 41053 (La. App. 2nd Cir. 5/17/06), 930 So.2d 1160. Defendants argue that because no claims for inadequate medical care were pled, that the claims fail. They further argue that under these facts, Defendants did provide reasonable medical care sufficient to satisfy any duty owed to Williams.

The Court disagrees. Based on these facts, the Court finds that there is a genuine dispute of material fact regarding whether Defendants provided reasonable medical care to Williams. Accordingly, Defendants Motion is DENIED on this ground.

### 5.   Good Faith Defense

Defendants argue that they are entitled to a good faith defense because "no actions were committed with malice. In addition, "there is no evidence that their actions were constitutionally infirm."[38] The Court does not agree and DENIES Defendants' Motion on this ground.

### 6.   Claims against Patrick M. Temple

Defendants assert that because there have been no claims made against Defendant Patrick Temple, that he should be dismissed from the suit. Plaintiffs do not oppose this. Therefore, this portion of Defendants' Motion is GRANTED, and Temple is DISMISSED.

### 7.   Punitive Damages

Defendants claim that in order for Plaintiff to recover punitive damages, she must prove that the conduct of Defendants was motivated by ill-will or intent or involved reckless or callous indifference to the constitutional rights of Williams. *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992).

The Court finds that because there is a genuine dispute of material fact regarding the question of deliberate indifference, then there remains an issue of whether Defendants acted with callous indifference to the constitutional rights of Williams. Therefore, Defendants' request to dismiss Plaintiff's federal punitive damages claim is DENIED.

---

[38] [Doc. No. 79, p. 33]

**8. Claims made by the Succession of Karnesha Williams, Zamiyah Beachem, William Ivery**

Defendants argue that any claims made by the Succession of Karnesah Williams, Zamiyah Beachem, and William Ivery should be dismissed because they were dismissed in the Third Amended Complaint. The Court agrees, and the claims made by those parties are DISMISSED.

**C. Motion to Strike**

Fed. R. Civ. P. 12(f) allows the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. "Immaterial matter" is defined as "that which has no essential or important relationship to the claim for relief or defenses being pleaded." *Marceaux v. Lafayette Consol. Gov't.*, 2012 WL 5197667 at 1 (W.D. La. Oct. 18, 2012). Immateriality is established by showing that the challenged allegations can have no possible bearing on the subject matter of the litigation. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.* Scandalous matter is that which improperly casts a derogatory light on someone, most typically on a party to the action. *Id.*

A motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy. *Augustus v. Bd. Of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

After reviewing the briefing in this matter, the Court construes Defendants' Motion for Summary Judgment to contain within it a Motion to Strike. Defendants are moving to strike several exhibits from Plaintiff's Opposition to the Motion for Summary Judgment. Specifically, Defendants move to strike the deposition of Richard Lichten ("Lichten"), the deposition of Dr. Kris Sperry ("Dr. Sperry"), the cellphone video captured by an inmate. Defendants assert that these exhibits are not authenticated, consist of or are based upon inadmissible hearsay, seek to render opinions for which the witness is not qualified to render, seek to render opinions on the ultimate

19

issues of fact, are irrelevant, and/or any relevancy is outweighed by potential prejudice. The Court ordered [Doc. No. 96] additional briefing on the Motion to Strike, and Plaintiff replied [Doc. No. 97]. Defense did not file a brief, but the Court can make a determination based on the briefing in Defendants' Reply memorandum.

In Defendant's Reply brief [Doc. No. 87] to Plaintiff's Opposition, Defendants assert that "none of Lichten's opinions, testimony or any portion of his report is relevant or admissible." Further, Defendants assert that Lichten is not a healthcare provider nor competent to give testimony as to the facts at issue in this matter. In response, Plaintiffs assert that Lichten did not give medical opinions in his deposition and that he has the education and training to testify as an expert in jail/prison procedures.[39]

Defendants further argue that Dr. Sperry's report and opinions should be stricken from the Court's consideration of the Motion for Summary Judgment. In support of this assertion, Defendants aver that Dr. Sperry was never deposed and that Plaintiff only provided a report of Dr. Sperry that did not contain a declaration or affidavit.[40] Accordingly, there is nothing setting out Dr. Sperry's qualifications as an expert. In response, Plaintiff argues that Defendants have not been prejudiced by her failure to include a curriculum vitae or affidavit with Dr. Sperry's report. Plaintiff explains that she "erroneously forgot to include Dr. Sperry's [CV]."[41]

Finally, Defendants assert that to the extent that Lichten's opinions, particularly Opinion #3 and Opinion #4, are based on a cellphone video taken by an inmate, the opinion should be stricken from the Court's consideration of the Motion for Summary Judgment.[42] Defendants point

---

[39] [Doc. No. 97]
[40] [Doc. No. 87]
[41] [Doc. No. 97, p. 1]
[42] [Doc. No. 87, p. 36]

out that the video is not authenticated and that the statements made in the video are hearsay.[43] Further, Defendants move to strike any of Lichten's opinions that are based on written statements provided by inmates after Williams' death because they are not authenticated and are hearsay.[44]

To the extent that Defendants move to strike Lichten's testimony, the Motion is GRANTED IN PART. Lichten's Opinions #3 and #4, any portion of his opinion that may render a medical opinion, any portion of his testimony that discusses the cellphone video captured by an inmate, and any portion of his testimony that highlights statements made by inmates after Williams' death are STRICKEN. To the extent that Defendants move to strike the remainder of Licthen's testimony, the Motion is DENIED. The Court finds that Lichten's testimony as it relates to jail/prison procedure is material to the issues on the Motion for Summary Judgment.

To the extent that Defendants move to strike Dr. Sperry's testimony, the Motion is DENIED. The Court finds that for purposes of considering the Motion for Summary Judgment, Dr. Sperry's testimony is material.

To the extent that Defendants move to strike cellphone video captured by an inmate, the Motion is GRANTED, and the Court will not consider this video for purposes of summary judgment. Although the video may be material to the issues here, the video has not been authenticated, and, is therefore, inadmissible evidence.

## III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion for Summary Judgment [Doc. No. 78] is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Defendants move to dismiss the claims for failure to train and supervise, the Motion is

---

[43] [Id.]
[44] [Id.]

**GRANTED**, and Plaintiff's claims against Defendants for failure to train and supervise are **DISMISSED**.

**IT IS FURTHER ORDERED** that to the extent Defendants move to dismiss the claims against Patrick M. Temple, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that to the extent Defendants move to dismiss the claims made by the Succession of Karnesah Williams, Zamiyah Beachem, and William Ivery because they have been abandoned, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the remainder of Defendants' Motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [Doc. No. 87] is **GRANTED IN PART** and **DENIED IN PART** for the reasoning consistent with this opinion.

MONROE, LOUISIANA, this 26th day of March 2024.

Terry A. Doughty
United States District Judge